. Reese, J.
delivered the opinion of the court.
This is an action of debt upon a note, made by the plaintiff in error, and payable to the defendant for one thousand dollars. Two pleas were filed, which in substance, state that Russell and Pyland, previous to the elction for Governor of the State of^-TéiÜ-nessee in the year 1839, being themselves electors in that éTédtion, bet and bargained with each other, upon the result of the election, the said Russell, the sum of one thousand dollars, that Newton Cannon would be elected Governor, and the said Pyland, the sum of five hundred dollars, that James K. Polk would be elected; and that said note was given in consequence of said bet, and as a security for its payment, if the same should be lost. On the trial, two *132 witnesses proved, that they heard Pyland admit that the note sued on, had been bet on the election. Another witness, William S. Anderson, proved that on the day of the election, for Governor, in August, 1839, the plaintiff and defendant came to him about 12 o’clock and placed in his hands the note sued upon, and a note on one Cotley, for live hundred dollars, and told him if Polk was elected Governor, that witness was to hand the notes over to Pyland, but that if Cannon was elected Governor, to give them to Russell. Pie proved also, that they were electors in that election.
The bill of exceptions states, that the charge was satisfactory. A verdict was found for the plaintiff, which the court on motion, refused to set aside. As the evidence was all on one side, and fully established the truth, in substance, of the pleas, we are unable to perceive the ground on which the verdict was permitted to stand. If it be said in such cases, the parties are in pari delicto, tiren the defendant, who seeks to set aside a security void on grounds of public policy, and to resist an illegal demand, is in the better condition of the two. In the case of Allen vs. Hearne, 1 Term Rep. 56, a wager between voters, with respect to a member of Parliament, laid before the poll began, was decided to be illegal, on the grounds, that it was corrupt and against the fundamental principles of the British constitution, that it was a gaming contract not to be encouraged, and of dangerous tendency. And judge Van Ness, in the case of Buren vs. Richer, 4 John. Rep. 435, referring to the above case very properly observes, “that, if for such reasons, a bet of this description was considered to be void in England, how much is their force increased, when applied to an analogous case in our country, in which the very existence of every department of the government depends upon the free, and unbiassed exercise of the elective franchise.” We are not left here, however, as in New York, in the case last refered to, and in the case of Rust vs. Gott, 9 Cowan, 169, to general reasonings of a moral and po-Ij^qalppharacter, nor can we, as they, be embarrassed, by such questions, as whether the wager took place before or after the election; whether those who wagered, were electors or not, or whether they had voted or not. Because our legislature, in 1823, with a wise and prudent forecast, and with an elevation and purity of political morals, worthy of all praise, cut off by the roots, and at one blow, all such distinctions, when they declared, (ch. 23, sec. 2,) “that any person or persons, who shall make any bet or wa *133 ger of money, or other valuable thing, upon any election in this State, shall be guilty of a misdemeanor, and upon conviction thereof, on indictment or presentment, shall pay a fine,” &c. Here we see a bet, or wager upon an election, is placed upon the footing of actual gaming in other cases. The legislature justly viewed it as a great evil. It may lead to bribery and corruption; but short of that, how revolting it is to witness, the mean, sordid andmercenary motives of the gambler mingling themselves in the exercise of the elective franchise, which should be entirely guided and controlled by a liberal and enlightened patriotism. The note then, in this case, was illegal and void by the principles of common law itself, and the taking and giving it upon a wager, on an election, an indictable offence by the statute. Why then, should not the verdict be set aside in this court? There is no question of preponderancy in the proof, no weighing of the testimony, no intendment in favor of the verdict. There is nothing to sustain the verdict, nothing upon which it can stand, and it must, therefore, be set aside, and’ a new trial granted.